

U.S. Department of Justice

United States Attorney
Eastern District of New York

AA/PP
F. #2023R00676

271 Cadman Plaza East
Brooklyn, New York 11201

March 24, 2025

By ECF

The Honorable Carol B. Amon
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Alain Mitrani Bibliowicz
                  Criminal Docket No. 25-39 (CBA)

Dear Judge Amon:

      The government respectfully submits this letter to notify the Court of two potential conflicts involving Adam Kaufmann, Esq. and Anthony Capozzolo, Esq., who represent the defendant Alain Mitrani Bibliowicz.  First, Messrs. Kaufmann and Capozzolo previously represented a co-conspirator of the defendant, Sergio Esteban Arciniegas Pena.  Second, Messrs. Kaufmann and Capozzolo are currently representing an individual who has received a grand jury subpoena and may be a witness at trial ("Witness-1").

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982).  See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

## BACKGROUND

      On January 30, 2025, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging the defendant with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) and conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960.  As alleged in the indictment, from approximately 2020 to 2024, the defendant was an owner and leader of a criminal organization (the "Company") that laundered drug proceeds through United States financial institutions.  The defendant structured the Company with others to make it appear like a legitimate technology business.  In reality, its public facing operations were a cover for an elaborate multi-million dollar laundering enterprise based in Florida and Colombia.

The defendant's co-conspirator, Sergio Esteban Arciniegas Pena, was previously charged and arrested with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). When he made his initial appearance in this district, Mr. Kaufmann represented him. Shortly thereafter, Mr. Arciniegas Pena retained new counsel, David Nunez, Esq. Mr. Nunez advised the government that Mr. Arciniegas Pena waives any potential conflict with his previous attorney representing Mr. Bibliowicz.

In addition, the government served a grand jury subpoena on Witness-1 for documents and testimony, and Witness-1 may be a witness at any trial against Mr. Bibliowicz. After the government served the subpoena on Witness-1, Messrs. Kaufmann and Capozzolo stated that they represent Witness-1 for purposes of complying with the subpoena.

DISCUSSION

I.   Applicable Law

  A.   Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

  1.   Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

2

## 2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

## 3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

3

B.     Relevant Conflicts

An attorney's representation of a co-conspirator presents an inherent conflict of interest. A serious conflict may also arise if the defendant wished to cooperate with the government's investigation and testify as to facts inculpating the other client. See Locascio, 6 F.3d at 931; United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to both his current and former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295. Furthermore, in evaluating an actual or potential conflict of interest, actions of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

That means that, in representing a current client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a current client, a lawyer may not attack other clients through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006); Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

The duty of loyalty to his other client thus effectively precludes a lawyer from vigorously cross-examining the other client or commenting on his credibility, which may be essential to the effective representation of the present client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" — a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); Malpiedi, 62 F.3d at 469 (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

Notwithstanding the limitations outlined above, a defendant can generally waive potential conflicts arising from his attorney's prior representation of a co-conspirator. See Perez,

4

325 F.3d at 124 (citing <u>United States v. Fulton</u>, 5 F.3d 605, 613 (2d Cir. 1993)).  The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross examine a former client in order to effectively represent a current client."  <u>United States v. Oberoi</u>, 331 F.3d 44, 50 (2d Cir. 2003).  Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

<u>Perez</u>, 325 F.3d at 124 (quoting <u>Fulton</u>, 5 F.3d at 613).

## II.   Analysis

Because Messrs. Kaufmann and Capozzolo represent the defendant and previously represented his co-conspirator, Mr. Arciniegas Pena, a potential conflict of interest exists.  Similarly, Messrs. Kaufmann and Capozzolo's representation of Witness-1 presents similar potential conflicts if Witness-1 testifies at trial.  Specifically, Messrs. Kaufmann and Capozzolo's duties of loyalty and confidentiality to each client could impede them from counseling the defendant as to viable defense strategies, restrict them from making certain arguments, preclude them from cross-examining witnesses, or presenting certain avenues of mitigation at sentencing.  Thus, a <u>Curcio</u> inquiry is necessary.  Based on the information now known to the government, it believes that these conflicts are waivable.  Therefore, the government respectfully requests that the Court conduct a <u>Curcio</u> hearing and: (a) confirm that defendant intends to continue to be represented by Messrs. Kaufmann and Capozzolo, and (b) confirm that any potential conflict is waivable.[1]

## III.  Proposed Questions

In the event the Court determines that the defendant can waive the potential conflict of interest, the government proposes that the Court advise the defendant as follows:

> I am advised that your attorney previously represented an individual the government has identified as your coconspirator and also represents a potential witness at the trial.  Your attorney has certain ethical obligations to these other clients.  For example, it might be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on his other clients.

---

[1] At the March 18, 2025, arraignment and status conference, defense counsel stated that Mr. Bibliowicz would retain Curcio counsel prior to the hearing.

Your attorney also may have privileged information from his other clients that could assist in your defense but that he could not disclose because of his ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crime charged against you or your relationship with your coconspirators, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he may have obtained from his other clients.

Your attorney will be constrained by his ethical obligations from making arguments or taking positions against his other clients, shifting blame to them, or cross-examining them should they take the stand at trial.

There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has represented other clients in matters related to this case. No one can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including sentencing. If you proceed with your attorney, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney. Do you understand that?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

Is there anything I have said that you wish to have explained further?

Are you knowingly and voluntarily waiving your right to conflict-free representation?

>Do you agree to waive any post-conviction argument, on appeal or otherwise, that your attorney's prior representation of another party, your co-conspirator, caused you to be denied effective assistance of counsel?

## CONCLUSION

For the foregoing reasons, the Court should notify the defendant of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Curcio.  The Court should further advise the defendant regarding his right to conflict-free representation and determine if he can waive those rights.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:            /s/
      Adam Amir
      Philip Pilmar
      Assistant U.S. Attorneys
      (718) 254-6116/6106

cc:   Adam Kaufmann, Esq.
      Anthony Capozzolo, Esq.
      David Nunez, Esq.