UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CASE NO. 25-CR-00039-CBA


UNITED STATES OF AMERICA

vs.

ALAIN TZVI BIBLIOWICZ MITRANI

                    Defendants.
_____/


**ALAIN BIBLIOWICZ' FIRST MOTION FOR JUDGMENT OF ACQUITTAL ON EACH COUNT IN THE SUPERSEDING INDICTMENT**

DESCALZO LAW, P.A.
150 Southeast 2nd Avenue
Suite 600
Miami, Florida 33131
Direct: 305.489.1018
Email: md@descalzolaw.com
Florida Bar No. 669318

FELDMAN FIRM PLLC
150 Southeast 2nd Avenue
Suite 600
Miami, Florida 33131
Direct: 305.714.9474
Email: afeldman@feldmanpllc.com
Florida Bar No. 60325

*Attorneys for Alain Tzvi Bibliowicz Mitrani*

## INTRODUCTION

Mr. Bibliowicz seeks a judgment of acquittal on each of the Counts in the Superseding Indictment. Under Rule 29, the court may not assess the credibility of witnesses in deciding whether to grant an acquittal but must determine if, construed in the light most favorable to the government, a reasonable jury could find beyond a reasonable doubt that Mr. Bibliowicz is guilty of the charged crimes. Here, in doing so, the court must evaluate whether the evidence presented by the government, as a matter of law, can survive a Rule 29 challenge. It cannot for the reasons below.

First, each of the money laundering conspiracies is tethered to an underlying specified unlawful activity (21 U.S.C. Section 841, 846, and 959). Absent the commission of an underlying crime, there can be no money laundering because there are no proceeds of a federal crime to launder. Here, there has been no evidence of any conduct proscribed by 21 U.S.C. Sections 841, 846, and 959 because those statutes require at a minimum that the drug trafficking activity have a nexus to the United States. That is, an agreement to possess or distribute drugs in the United States, or as proscribed by Section 959,[1] manufacturing or distributing drugs knowing that the drugs will be imported into the United States. The government has failed to present any such evidence.

---

[1] The grand jury did not return a conspiracy related SUA as to Section 959. The SUA is a substantive violation of that statute. See Superseding Indictment.

Second, the bank fraud conspiracy must fail. At best, the government has shown false statements to Safra, Citi, and JP Morgan Chase banks. Yet, there is no evidence of an *intent to deprive another person of property or money* – a precondition to finding guilt under the bank fraud statute. And, there is no evidence that the statements made to the bank were material to a bank's decision to do anything other than open an account versus to part with money or property. Lastly, there is insufficient evidence of venue necessary and acquittal is warranted for this reason too.

Third, there has been no evidence of unlicensed money transmission as proscribed by 18 U.S.C. Section 1960. Even if there were, the charge must fail because the evidence as construed in the light most favorable to the government is barred by the exemption found in 31 C.F.R. Section 1010.100 (ff)(8)(iii) which exempts the exchange of currencies on an "infrequent basis" where such conduct occurs without a defendant charging a fee or commission. *See id.* (exempting "a natural person who engages in an activity identified in paragraphs (ff)(1) through (ff)(5) of this section on an infrequent basis and not for gain or profit."). Section (ff)(1)-(5) includes both money transmitting business and currency exchanging. Finally, the government has failed to present any evidence of venue necessary to survive acquittal.

I.    **Evidence is Insufficient and Acquittal is Warranted as to Each Count**

    **A. Money Laundering Conspiracies**

Concealment money laundering and engaging in a transaction derived from illegal proceeds of a *specified unlawful activity* each plainly require a predicate crime and the commission of the charged specified unlawful activity. *See* 18 U.S.C. Sections 1956(a)(1)(B)(1)[2] and 1957(a)[3]. Here, the predicate crimes (SUA's) returned by the grand jury are drug trafficking in violation of 21 USC Sections 841 and 846 and Section 959, which proscribes a substantive violation involving distribution possession or manufacturing. *See* Superseding Indictment.

In *Morrison v. National Australian Bank*, __ U.S. __, 130 S. Ct. 2869, 2881-83 (2010), the Supreme Court held that, absent a "clear indication of an extraterritorial application," Section 10(b) of the 1934 Exchange Act does not apply extraterritorially to conduct occurring outside the *United States. Morrison,* 130 S. Ct. at 2881-2883. In so holding, Justice Scalia reiterated that "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison,* at 2881-83 (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991)). This is because

---

[2] Section 1956 unequivocally states "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction **which in fact involves the proceeds of specified unlawful activity—**

[3] Section 1957 proscribes "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 **and is derived from specified unlawful activity.."**

"Congress generally legislates with domestic concerns in mind." *Smith v. United States,* 507 U.S. 197, 204 n.5 (1993). As a result, a presumption against extraterritoriality prevails and applies equally to both civil and criminal statutes. See *Morrison,* 130 S. Ct. at 2881; *see also United States v. Vilar*, Nos. 10-521-cr(L), 10-580 cr(CON), 10-4639-cr (CON), 2013 WL 4608948 (2d Cir. Aug. 30, 2013) (finding "the general rule is that the presumption against extraterritoriality applies to criminal statutes, and section 10(b) is no exception").

Several of the drug statutes included as the specified unlawful activity necessary to render a guilty verdict (Sections 841 and 846) do not contain any provision authorizing extraterritorial application. Recognizing this, courts have consistently held that there is no crime under these statutes where there is no evidence that the object of the conspiracy was to *possess or distribute drugs in the United States.*

This Circuit has recognized this premise in *United States v. Orozco-Prada*, 732 F.2d 1076, 1088 (2d Cir. 1984) (applying statute where vessel containing cocaine in Colombia was destined for the United States as part of a conspiracy to import cocaine into United States, because "[t]he intent to cause effects within the United States also makes it reasonable to apply to persons outside United States territory a statute which is not expressly extraterritorial in scope." (citation omitted)); *United States v. Muench,* 694 F.2d 28, (2d. Cir. 1998) (defendants possessed cocaine at JFK airport en route to West Germany as part of a conspiracy to smuggle cocaine from South America to Germany). In both cases, there was evidence that the drug traffickers

intended to distribute cocaine in the United States and the trafficker in *Muench* was caught at JFK with cocaine.

In a First Circuit case, *United States vs. Hayes*, 653 F.2d 8, 15 (1st Cir. 1981) followed this reasoning holding that "intent to distribute" must be within the territorial United States to satisfy the jurisdictional nexus required by the due process clause. *Hayes*, 653 F.2d at 15. There, the court held that §§ 841 and 846 do not apply extraterritorially to marijuana possessed by a U.S. registered vessel on the high seas). As the Court explained: "so long as it is clear that the intended distribution would occur within the United States … jurisdiction may be maintained," but "[w]here distribution is intended elsewhere … the provision does not apply." *Hayes,* at 15-16.

And in a district court case in *United States vs. Caffiero,* 242 F. Supp. 49 (D. Mass. 2003) the defendant boarded a nonstop flight in Mexico to Rome, carrying 180 grams of cocaine. The flight made an emergency landing in Boston because defendant had become belligerent. Law enforcement discovered a package of cocaine on defendant, so arrested him and charged him with violations of §§ 841 and 846. In dismissing the indictment, the Court found that the United States lacked the "necessary jurisdictional nexus" because the defendant did not voluntarily enter the United States, explaining that the United States may not exercise jurisdiction over acts that were not intended to produce effects within its territories. *Caffiero,* 242 F. Supp. 2d at 54-55 (In this era of globalization no doubt borders have become fluid and the designation of territorial and extraterritorial jurisdiction often times seems like

an outdated false binary. Nonetheless, the laws of the United States cannot and do not automatically circumscribe the conduct of all crimes contemplated or committed around the globe.").

And finally, an Eleventh Circuit decision is also instructive. In *Lopez-Vanega*, the Eleventh Circuit provided a detailed analysis explaining why meetings do not constitute a violation of § 841 and, therefore, cannot further a § 846 conspiracy. *See Lopez-Vanega*, 493 F.3d at 1313. There, members of a Colombian drug trafficking organization were charged with violating §§ 846 and 841. The defendants held at least five meetings in Miami, Florida with local U.S. drug traffickers to discuss plans to transport cocaine from Venezuela to Colombia to France. Many of those meetings also involved a Saudi Arabian prince. The prince, with the assistance of the co-conspirators, successfully shipped cocaine on his airplane from Venezuela to Paris, France for distribution in Europe.8 At trial, defendants moved for judgment of acquittal, contending that the agreement to ship cocaine from Colombia to Venezuela to Saudi Arabia to France for distribution throughout Europe did not violate § 846, because the object of the conspiracy – the possession and distribution of cocaine on foreign soil – is not a violation of 21 U.S.C. § 841(a)(1). The district court denied the motion, the jury rendered verdicts of guilty, and defendants appealed their convictions

On appeal, the court framed the issue as follows: whether discussions occurring in the United States relating to possession of controlled substances outside of the United States with intent to distribute those substances outside of the United States

is a crime in the United States. *Lopez-Vanega*, 493 F.3d at 1311. After examining the

cases holding that defendants may be prosecuted for violating § 841, the court held:

> In each of those cases some other nexus to the United States
> allowed for the extraterritorial application of § 841(a)(1):
> defendants either possessed or conspired to possess controlled
> substances within the United States, or intended to distribute
> controlled substances within the United States. Our predecessor
> Court made clear in Baker that § 841(a)(1) does not apply to
> possession outside of the United States territory unless the
> possessor intends to distribute the contraband within the United
> States (citations omitted). Furthermore, there can be no violation
> of § 846 if the object of the conspiracy is not a violation of the
> substantive offense. 21 U.S.C. § 846 ("Any person who …
> conspires to commit any offense defined in this subchapter …").
> Accordingly, where, as here, the object of the conspiracy was to
> possess controlled substances outside the United States with the
> intent to distribute outside the United States, there is no violation
> of § 841(a)(1) or § 846.

*Lopez-Vanega*, at 1312-13.

The court continued:

> Under 21 U.S.C. §§ 841 and 846, Congress has not stated its
> intent to reach discussions held in the United States in
> furtherance of a conspiracy to possess controlled substances
> outside the territorial jurisdiction of the United States with the
> intent to distribute controlled substances outside of the territorial
> jurisdiction of the United States. . . . Because the Court holds that
> 21 U.S.C. §§ 841 and 846 do not apply extraterritorially, the
> conduct of [defendants] does not violate those statutes.

*Id*. at 1313.

Therefore, the holding in *Lopez-Vanega*, this Circuit, and other Courts of

Appeals addressing the narrow circumstances under which the government may

prosecute a defendant pursuant to § 841 for participation in extraterritorial drug

trafficking activities establish that "words and actions" at the meetings in the United

States, even protracted negotiations in the United States between government agents and co-conspirators, cannot establish the requisite jurisdictional nexus to satisfy due process where those words and actions are limited to an agreement contemplating and specifically intending a delivery of cocaine from one foreign country in South America to another foreign country in Europe. *See. Lopez-Vanega*, at 1312 13; *Orozco-Prada*, 732 F.2d at 1088; *Muench,* 694 F.2d 28.[4]

The remaining statute **21 USC Section 959,** unlike Sections 841 and 846, contains an extraterritorial provision in subsection 959(d) as set forth below:

### a)Manufacture or distribution for purpose of unlawful importation

It shall be unlawful for any person to <u>manufacture or distribute a controlled substance in schedule I or II or flunitrazepam or a listed chemical intending, knowing, or having reasonable cause to believe that such substance or chemical will</u>

---

[4] Other Circuits have upheld convictions under these statutes but only under circumstances where the conduct envisioned the United States. *United States v. Baker,* 609 F.2d 134, 137 (5th Cir. 1980) (upholding the extraterritorial application of the statute to defendants for vessel containing marijuana outside the 3 mile territorial waters radius of the U.S. but within the twelve miles "customs" waters reasoning that "[t]he power to control efforts to introduce illicit drugs into the United States from the high seas and foreign nations is a necessary incident to Congress' efforts to eradicate all illegal drug trafficking"); *See, e.g., United States v. Larsen*, 952 F.2d 1099, 1100–01 (9th Cir. 1991) (finding extraterritorial application appropriate when vessel containing marijuana was headed to the United States as part of a conspiracy to import marijuana into the United States)); *United States v. Wright-Barker*, 784 F.2d 161, 167 (3rd Cir. 1986) (applying §§ 841 and 846 where vessel interdicted 200 miles offshore from New Jersey containing marijuana intended to be distributed in United States, because "Congress undoubtedly intended to prohibit conspiracies to import controlled substances . . . as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of illegal narcotics").

be unlawfully imported into the United States or into waters within a distance of 12 miles of the coast of the United States.

**(b)Manufacture or distribution of listed chemical for purpose of manufacture or unlawful importation of controlled substance**It shall be unlawful for any person to manufacture or distribute a listed chemical—**(1)** intending or knowing that the listed chemical will be used to manufacture a controlled substance; and **(2)** intending, knowing, or having reasonable cause to believe that the controlled substance will be unlawfully imported into the United States.

**(c)Possession, manufacture, or distribution by person on board aircraft**It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to—

**(1)** manufacture or distribute a controlled substance or listed chemical; or

**(2)** possess a controlled substance or listed chemical with intent to distribute.

**(d)Acts committed outside territorial jurisdiction of United States**

This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States.

Yet, that statute proscribes a crime only under two circumstances:

First, if a person distributes or manufactures a listed chemic and "intend[s], *knowing, or having reasonable cause to believe that the controlled substance will be unlawfully imported into the United States.*" See

Second, if a person manufactures or distribute a controlled substance in schedule I or II or flunitrazepam or a listed chemical intending, knowing, or *having reasonable cause to believe that such substance or chemical*

***will be unlawfully imported into the United States*** or into waters within

a distance of 12 miles of the coast of the United States.

The evidence at trial, however, has failed to demonstrate that any person committed the above crimes and, as charged, this SUA contemplates a substantive violation of the statute (not a conspiracy). Instead, at best, the evidence demonstrates that Ernesto Lopez and Sergio Arciniegas had relationships with supposed narcotraffickers in Colombia. But there has been no evidence about what the intent of drug traffickers was. Nor was there any evidence of the object, goals or routes of drug traffickers except through Hector Paez. Hector Paez did not testify about the flow of funds (destinations or locations) that were derived from drug trafficking as they relate to his relationship with Sergio Arciniegas. Instead, what Mr. Paez testified about was that he wired money from one Mexican bank to another Mexican bank (PMI Mexico) in connection with a group associated with "Herbalife" and "Natasha" but had no information about what their business did and whether they were involved in drug trafficking. Those were the only bank transactions entered into evidence through Mr. Paez and the defense entered them as Exhibits AB 670, 671, and 672.[5]

There is no testimony from any witness, certainly not Ernesto Lopez or Sergio Arciniegas, that the persons (the supposed drug traffickers) ever talked to Ernesto or Sergio about how the USDT they were selling to Treebu Capital was derived from activities proscribed by Sections 841 and 846. Indeed, neither witness testified that

---

[5] On redirect the government's only retort was to elicit testimony from Mr. Paez about activity between Mexico and Colombia, not the United States.

any of their drug trafficker connections mentioned that they intended to distribute drugs to the United States.

Similarly problematic, there is no evidence that Ernesto Lopez or Sergio Arciniegas and the supposed drug traffickers ever talked about how the USDT they were selling to Treebu Capital was derived from activities proscribed by Section 959 --- namely manufacturing or distributing drugs that were intended for importation into the United States. Instead, what the government introduced was a string of ambiguous statements and associations --- connecting some of the suppliers with drug traffickers but not connecting their activities to any specific drug transaction in the United States. Juries can make reasonable inferences about the evidence but the jurors would be forced to engage in conjecture and speculation regarding what drug activities were, where they were, and what the intent of the drug activity was. The government has sprinkled references to supposed drug traffickers throughout this trial but nowhere in the record is there any basis for a reasonable juror to conclude that the persons with whom Arciniegas or Ernesto associated were ever traffickers who intended to distribute drugs or import drugs into the US.

There is no testimony about such an intent. There are no drug traffickers who testified. The witnesses never testified about specific drug sales or specific drug transactions or a specific period of time in which those transactions occurred. Nor is there any connection between a specific financial transaction with any of Mr. Bibliowicz companies that is connected to any drug sale or drug activity in the United

States. Repeating the conclusory statement that "all sales were from dirty crypto" does not fix this problem and it simply invites the jurors to speculate.

For these reasons judgment of acquittal is warranted as to both conspiracies because there is no evidence about which a reasonable juror could conclude that the specified unlawful activities of drug trafficking as charged (Sections 841, 846, 959) occurred. Nor is there a connection to any said activities to Mr Bibliowicz or his companies that does not require utter speculation by the jurors on this record.

### A. Bank Fraud

The bank fraud statute does not require the government to prove that a bank was defrauded, or that a defendant intended to cause harm or a loss to the bank. But the bank fraud statute unequivocally requires the government to prove that a defendant's intent was to deprive someone of money or property. *Cleveland v. United States*, 531 U.S. 12, 23–24, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000); *Ciminelli v. United States,* 598 U.S. 306, 316 (2023); *Kousisis vs. United States,* 145 S.Ct. 1382 (2025)

The Supreme Court's recent decision analyzing the "defraud" clause of the closely analogous wire fraud statute illuminates this point. In it, the court reinforced that "a defendant violates Section 1343 by scheming to obtain the victims money or property regardless of whether he seeks to leave the victim economically worse off." *Kousisis,* at 124. The Court continued:

> The money-or-property requirement lies at the heart of this dispute. Although the lower courts once interpreted the phrase "money or property" as something of a catchall, we recently reiterated that the federal fraud statutes reach only "traditional property interests." *Ciminelli*, 598 U.S. at 316, 143 S.Ct. 1121.

> Schemes that target the exercise of the Government's regulatory power, for example, do not count. See *Kelly*, 590 U.S. at 400; *Cleveland v. United States*, 531 U.S. 12, 23–24, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). Nor do schemes that seek to deprive another of "intangible interests unconnected to property." *Ciminelli*, 598 U.S. at 315, 143 S.Ct. 1121; (citation omitted). And in all cases, because money or property must be an *object* of the defendant's fraud, the traditional property interest at issue "must play more than some bit part in a scheme." *Kelly*, 590 U.S. at 402, 140 S.Ct. 1565. Obtaining the victim's money or property must have been the "aim," not an "incidental byproduct," of the defendant's fraud. *Id.*, at 402, 404, 140 S.Ct. 1565.

*Kousisis,* at 122. This is also the precise bank fraud theory in *United States vs. Lebvedev,* 932 F. 3d 40, 48 (2d Cir. 2019) that this Circuit first upheld and then vacated in light of *Ciminelli v. United States,* 598 U.S. 306, 316 (2023) precisely because the bank fraud conviction was premised on the now-impermissible deprivation of valuable economic information theory. In the now-vacated Second Circuit decision the court said:

> The evidence at trial demonstrated that Coin.mx was a money service business that was both unlawful and carried a higher risk of fraudulent transactions. The evidence also showed that Lebedev's role in Coin.mx's scheme was to disguise Coin.mx's Bitcoin transactions through front entities such as the Collectables Club, so the institutions processing those transactions would be more likely to process and approve them. On this basis, a reasonable jury could conclude that Lebedev deprived the financial institutions of the right to control their assets by misrepresenting potentially valuable economic information.

*Lebedev,* at 49.

Here, in the light most favorable to the government and without wading into credibility determinations, the evidence does not show that Mr. Bibliowicz did

anything other than cause false statements to be made to open accounts at Safra, Citi, and JP Morgan Chase. The false statements, construed in favor of the government, related to the nature of the business and where (which countries) the business transacted. The statements – construed in the government's favor -- were designed to permit the defendant to open accounts at these banks with the ultimate goal of being able to deposit, withdraw and transfer Mr. Bibliowicz' own funds into and out of those accounts. No reasonable juror on this record could intuit any evidence of an intent to deprive the bank (or any other person) or money or property in connection with this conduct.

For these reasons, acquittal should be granted.

### B. Unlicensed Money Transmission

The plain text of Section 1960 states:

> **a)** Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an ***unlicensed money transmitting busines***s, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
>
> "***unlicensed money transmitting business***" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
>
> **(A)** is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
>
> **(B)** fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
>
> **(C)** otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived

from a criminal offense or are intended to be used to promote or support unlawful activity;

Section 1960(b) narrowly defines the term "money transmitting" includes "transferring funds on **behalf of the public** by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."

Simply stated, the statute requires:

(1) the management control or ownership of an *unlicensed money transmitting business* which as proscribed by Section 1960(b) is a transferring funds *on behalf of the public* by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier**; and**

(2) that the money transmitting business affect interstate or foreign commerce in any matter degree **and**

(3) is operated without a state license**; or** fails to comply with the federal registration requirements under Title 21 Section 5330.

The government has presented no evidence of supposed "transmission" of money *on behalf of the public* as proscribed by Section 1960 other than the supposed pesos that were converted to dollars for Lolo Sudarsky. And, the pesos that were supposedly delivered in Colombia by Mr. Heller to an unknown person one time in connection with the sale of real property.

Construing their testimony in the light most favorable to the government, neither Mr. Heller nor Mr. Sudarsky agreed to engage in any intentional unlawful

conduct. Mrs. Sudarsky testified that his intent was never to do anything the law forbids. And the government did not elicit any testimony from Mr. Heller that would give rise to any inference that Mr. Heller intended to violate the law.

Furthermore, and very importantly, the evidence at trial has demonstrated that any such conduct covered by the money transmission statutes occurred on an infrequent basis and not for gain. *See* 31 C.F.R. Section 1010.100 (ff)(8)(iii)(exempting "a natural person who engages in an activity identified in paragraphs (ff)(1) through (ff)(5) of this section on an infrequent basis and not for gain or profit."). Section (ff)(1)-(5) includes both money transmitting business and currency exchanging. Exchanging currency 3 times per years over 5 years (60 months) for Lolo and one time for Mr. Heller is on its face "infrequent" and was not done for gain according to each witness. And so, as a matter of law, the exemption applies and judgment of acquittal is warranted.

## II.    Acquittal on the Bank Fraud and Unlicensed Money Transmission Charges is Also Warranted Based on Improper Venue

The government has not established venue for either the bank fraud or the unlicensed money transmission charges.

Venue is no "mere technicality." *United States v. Moran- Garcia*, 966 F.3d 966, 969 (9th Cir. 2020); *accord United States v. Miller*, 111 F.3d 747, 749 (10th Cir. 1997). Nor is it just a "matter[ ] of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944). Rather, "[q]uestions of venue in criminal cases ... raise deep issues of public policy," *id.*, which is why "[p]roper venue in criminal proceedings was a matter of concern to the Nation's founders." *United*

*States v. Cabrales*, 524 U.S. 1, 6, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998). Indeed, the Constitution "twice safeguards the defendant's venue right." *Id.* Article III instructs that the "Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. And the Sixth Amendment requires trial "by an impartial jury of the ... district wherein the crime shall have been committed." *Id.* amend. VI. The Federal Rules "echo the[se] constitutional commands," providing that " 'prosecution shall be had in a district in which the offense was committed.' " *Cabrales*, 524 U.S. at 6, 118 S.Ct. 1772 (quoting Fed. R. Crim. P. 18)

Venue is proper at the *locus delicti*—the place where the charged offense was committed. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278-79 (1999). The *locus delicti* is determined by "the nature of the crime alleged and the location of the act or acts constituting it." *Id.* at 279 (internal quotation marks omitted); *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (same). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Rodriguez-Moreno*, 526 U.S. at 279.

The first step of the inquiry is to identify the "essential conduct elements" of the charged crime. 22 F.4th at 1242. For conspiracy charges, the Venue Clause "permits a defendant charged with conspiracy to be tried in any State in which any coconspirator took any overt act in furtherance of the endeavor." S*mith v. United States*, 599 U.S. 236, 244 (2023). The second step of the inquiry is to "discern the

location of the commission of the essential conduct elements, which are the only relevant elements for venue, and determine whether the location of their commission is the same as the location of the trial." *United States v. Smith,* 22 F.4th 1236, 1242 (11th Cir. 2022) (emphasis added).

If Congress does not explicitly indicate the location in which it considers a crime to occur, "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). However, "where the acts constituting the crime and the nature of the crime charged implicate more than one location," venue may be constitutionally permissible in more than one district. *United States v. Reed,* 773 F.2d 477, 480 (2d Cir.1985).

## 1. Bank Fraud

In the present case, the government's bank fraud theory is that Mr. Bibliowicz (and presumably Mrs. Ramos although not mentioned in the Count) agreed to "defraud" three distinct banks (Safra, JP Morgan Chase, Citi) by making false statements concerning the nature of the business and the countries where the businesses transact. Yet, the government failed to present any evidence of an overt act in furtherance of bank fraud in this District.

The government walked through the account opening documents with three different bank witnesses (Villar, Mackanos, and Spalding) and elicited testimony about bank accounts from Mrs. Ramos. The evidence revealed that each of the

documents signed to open the accounts were made in Miami in the Southern District of Florida.

The *locus deliciti* of the bank fraud conspiracy is the agreement to defraud the bank. There is no evidence that defendant or any other person made any statement or had any interactions with anyone in this District in connection with the opening of any of the subject bank accounts. There was no evidence that a supposed co-conspirator took any steps to further the supposed bank fraud in this District. *See United States vs. Bezmalinovic,* 926 F. Supp. 435 (S.D.N.Y. 1997) (acquittal on bank fraud based on insufficient evidence of venue where among other things it was undisputed that the site of defendant's acts was the Eastern District of New York. The only acts alleged to have occurred in the Southern District of New York are the ministerial actions taken by MHT and Chemical Bank in the process of crediting defendant's account); *United States v. Gaughan*, 431 F.Supp.3d 686, 691 (D. Md. 2020) (granting judgment of acquittal in mail fraud prosecution where the defendant caused checks to be created from his employer's office in Maryland, but "the three checks at issue were not mailed from or delivered in the State of Maryland," and noting that "the Government's emphasis on the verb 'cause' rather than 'deliver' leads it to identify incorrectly the essential element conduct for mail fraud"); *United States v. Mosby,* 143 F.4th 264 (4th Cir. 2025) (vacating mortgage fraud based on erroneous instruction on that charge reasoning that preparatory acts were insufficient and noting that " rhis error could have been remedied by direction from the district court that the jury could establish venue by finding that an element of the crime was

committed in Maryland. But that is not what the jury was told. Instead, both the district court and the Government told the jury, "the Government need not prove that the crime itself was committed in this district [to establish venue]." J.A. 2439 (district court instruction); *id.* at 2326 (Government stating at closing: "The judge's instruction will say the Government doesn't need to prove the crime itself was committed in this district"). The court instructed that the jury had to find venue "[i]n addition to the elements of the offense[,]" and that it could do so by finding that "any act in furtherance of the crime occurred in the District of Maryland.")

Indeed, this is because the government's theory of the bank fraud is that Mr. Bibliowicz agreed to lie to the banks to open accounts. That agreement is complete once an account is open. It does not continue indefinitely and none of the supposed conduct (much of which is unclear and vague and there were no witnesses that testified about it) occurred in this District. Flights to JFK and fleeting references to wires in "New York" cannot cure this constitutional defect. And so acquittal is warranted for this reason too.

### 2. Unlicensed Money Transmission (Conspiracy)

In this case, it is not sufficient that the conspiracy touched or affected the Eastern District of New York. On this record, neither Mr. Sudarsky nor Mr. Heller ever stepped foot in this District or agreed with Mr. Bibliowicz to engage in any conduct in this District. They committed conduct in Colombia. There are no specific wires or transactions that any witness has referenced which touched this District in connection with the exchange of pesos to dollars. There is no conversation or

communication that occurred in this District that the government has presented through any witness that ties up to the conversion of this currency and Lolo or Mr. Heller.

Venue is therefore improper and is an additional basis for acquittal.

## CONCLUSION

For these reasons, a judgment of acquittal should be granted as to each count.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was served on counsel of record via CM/ECF.

*/s/Andrew S. Feldman*